UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEVIN JEFFERSON, | : |
| Plaintiff, | : Civ. No. 15-1086 (KM) (MAH) |
| v. | : |
| OFFICER GEORGE LIAS AND THE CITY OF ELIZABETH, | : OPINION |
| Respondents. | : |

**KEVIN MCNULTY, U.S.D.J.**

**I.   INTRODUCTION**

Plaintiff Devin Jefferson filed, through counsel, a civil rights complaint pursuant to 42 U.S.C. § 1983. (DE 47.) Presently pending before this Court is a motion for summary judgment filed by Officer George Lias ("Officer Lias"), as well as a motion for summary judgment filed by the City of Elizabeth. (DE 77; DE 78.) Plaintiff opposes the motions. (DE 81; DE 82.) For the reasons set forth below, the motions for summary judgment will be granted.

**II.   BACKGROUND**

  **a.  Factual Background**

At around midnight on January 15, 2014, Officer Timothy Staffer was on patrol in Elizabeth, New Jersey when he observed Plaintiff's vehicle traveling at a high rate of speed with its car alarm sounding. (DE 77-7 at 11-12.) Officer Staffer activated his police siren and overhead lights and attempted a motor vehicle stop. (*Id.* at 13-14.) However, Plaintiff did not stop, continued to travel at a high rate of speed, and failed to yield to traffic signals. (*Id.* at 13-14, 15.) Officer Staffer's partner called in the incident over the radio dispatch and other police vehicles joined the

pursuit. (*Id*. at 13-15.) One of the police officers who joined the car chase was Officer Lias, along with his partner Officer Franco Banos. (DE 81-3 at 5.)

During the pursuit, Plaintiff attempted to take a right-hand turn at an intersection, but "was going too fast," and his vehicle slid into a curb, hitting a fire hydrant. (DE 77-7 at 16.) With Plaintiff's vehicle at a stop, Officer Staffer got out of his patrol car, drew his weapon, and approached Plaintiff. (*Id*. at 16-18.) Officer Staffer stated that he could hear Plaintiff revving the vehicle's engine and began to yell at Plaintiff to stop. (*Id*. at 17.) When Plaintiff did not comply, Officer Staffer attempted to break one of the car's windows in an effort to remove Plaintiff from the car. (*Id*. at 18.) However, the car suddenly began to move in reverse and went into the road, where it struck a police vehicle. (DE 77-8 at 11; Antonelli Certification Ex. M 12:05:43-12:05:47.)

At this point, Officer Lias had arrived on the scene. His car was positioned directly opposite Plaintiff's vehicle on the other side of the intersection. (Antonelli Certification Ex. M at 12:05:48.) Plaintiff then proceeded to put his car into drive, heading in the direction of Officer Lias's car. (*Id*. at 12:05:47-12:05:49.) He did not strike Officer Lias's car, however, but passed it. (*Id*.) Simultaneously, Officer Staffer again attempted to approach Plaintiff's vehicle as it was moving and break the driver's side window. (*Id*. at 12:05:48-12:05:49.) As Plaintiff's vehicle drove by Officer Lias and his police cruiser, Officer Lias discharged his firearm once at Plaintiff's vehicle. (*Id*. at 12:05:49.)

Officer Lias testified that he did not know where Officer Banos was located at the time Plaintiff's vehicle began coming towards him, although he did know that Officer Banos was in the area. (DE 81-3 at 22) Lias stated that when Plaintiff's car began to move towards him, he feared it would hit him or another officer. (*Id.* at 27.) Officer Lias testified that he feared for his own safety,

2

as well as that of his partner and other officers, and felt he had to stop the vehicle. (*Id.* at 22, 27, 30.)

One of the shots hit Plaintiff. He continued to drive away, however, and the police continued to pursue him. (DE 81-3 at 82.) However, the police eventually called off the pursuit after they lost Plaintiff's vehicle. (*Id.*)

Plaintiff provides a somewhat different version of events. Plaintiff admitted that he saw the police pull behind his vehicle on January 15, 2014 and knew that they were trying to effectuate a stop. (DE 77-5 at 38–39.) He testified that he panicked, however, because he had been drinking that night and feared he would be arrested and "get in trouble with drug court." (*Id.*) In an attempt to avoid arrest, Plaintiff decided to accelerate his car. (*Id.* at 39.) He knew that police were following him and assumed they were trying to pull him over, but that he "just wanted to go home." (*Id.* at 39–40.) Plaintiff stated that after he hit the fire hydrant, he looked behind him and put his vehicle into reverse. (*Id.* at 40–41.) He did not recall whether he hit a police vehicle as he reversed. (*Id.* at 40.) He also did not remember where he was trying to go after he reversed into the intersection and then proceeded to drive forward, but he did remember being shot. (*Id.* at 41.) After being shot in his arm, Plaintiff stated, he drove himself to the hospital. (*Id.*)

### b. Procedural Background

As a result of the events that occurred on January 15, 2014, Plaintiff was indicted in New Jersey state court for second-degree eluding, contrary to N.J. Stat. Ann. § 2C:29-2b; fourth-degree aggravated assault, contrary to N.J. Stat. Ann. § 2C:12-1b(5); and third-degree hindering apprehension or prosecution, contrary to N.J. Stat. Ann. § 2C:29-3b(4). (DE 77-5 at 16–17.) On October 27, 2014, he pled guilty to second-degree eluding. (*Id.* at 19.)

On February 4, 2015, Mr. Jefferson sued Officer Lias and the City of Elizabeth. (DE 1.)

Following discovery and the filing of Plaintiff's third amended complaint, Officer Lias and the City of Elizabeth filed these motions for summary judgment. (DE 77; DE 78.) Plaintiff opposes both motions. (DE 81; DE 82.)

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f

the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (*quoting Anderson*, 477 U.S. at 249-50) ). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). In that respect, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV. ANALYSIS

### A. Qualified Immunity

Plaintiff's complaint alleges that Officer Lias used excessive force when he shot at Plaintiff's vehicle on January 15, 2014. (DE 47 at 5.) Officer Lias moves for summary judgment on this claim based on qualified immunity grounds. (DE 77-3 at 16.) He argues that his use of deadly force was reasonable under the circumstances, but even assuming *arguendo* that it was not reasonable, that there was no clearly established law that it was "unconstitutional to shoot a fleeing driver to protect those whom his flight might endanger." (*Id.* at 15–17.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

5

rights of which a reasonable person would have known." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is intended to provide "ample room for mistaken judgments" and to protect "all but the plainly incompetent or those who knowingly violate the law." *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 254 (3d Cir. 2010) (internal quotation marks and citation omitted). A public official is entitled to qualified immunity if their conduct did not violate a constitutional right or if that right was not clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. The burden of establishing qualified immunity is on the party claiming its protection. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006); *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

At the qualified immunity stage, "the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The United States Supreme Court has cautioned against defining "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A party need not present a "case directly on point", but the precedent must place the constitutional question "beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Unless "'every reasonable official would [have understood] that what he [was] doing violate[d]' the right at issue[,]" then an officer is entitled to qualified immunity. *Id.* (alterations in original) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

In reviewing its own case law in 2015, the Supreme Court noted that it has "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment,

6

let alone to be a basis for denying qualified immunity." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 310 (2015); *Webb v. City of Newark*, Civ. No. 12-3592, 2018 WL 623643, at *6 (D.N.J. Jan. 29, 2019), *aff'd sub nom. Martin for Estate of Webb v. City of Newark*, 762 F. App'x 78 (3d Cir. 2018). Indeed, the Supreme Court has "consistently held that officers either did not violate the Fourth Amendment or were entitled to qualified immunity when they used deadly force during car chases[.]" *See Bland v. City of Newark*, 900 F.3d 77, 83-84 (3d Cir. 2018). In the Supreme Court's decision in *Brosseau*, the Court held that "an officer was entitled to qualified immunity after she shot 'a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area [were] at risk from that flight.'" *Bland*, 900 F.3d at 84 (quoting *Brosseau*, 543 U.S. at 200). The Supreme Court found that the officer's actions fell within the "hazy border between excessive and acceptable force" and thus, granted immunity. *Brosseau*, 543 U.S. at 201. In the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), an officer was found not to have violated the Fourth Amendment where he terminated a car chase by "ramming" his bumper into the car of a suspect whose driving "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Scott*, 550 U.S. at 381. And, in *Plumhoff v. Rickard*, 572 U.S. 765 (2014), the Supreme Court determined that an officer's deadly shooting of a suspect was reasonable where the suspect led the officers on a high speed car chase and where it was "beyond serious dispute that [the suspect] posed a grave public safety risk." *Id.* at 776–77.

Third Circuit case law is "in accord" with these Supreme Court decisions. *See Thompson v. Howard*, 679 F. App'x 177, 183 (3d Cir. 2017). In *Thompson*, for example, an officer was attempting to arrest of a suspect when the suspect fled to his car. *Id.* at 178–79. Although the officer attempted to break the window and reach into the vehicle, the suspect put the car into drive

7

and fled. *Id.* As he fled, the suspect hit the officer's police vehicle, but continued to drive away. *Id.* When the suspect was driving approximately ten to twelve feet from the officer, the officer shot at the suspect. *Id.* The Third Circuit held that "regardless of whether [the suspect] was at that moment driving towards or away from [the officer], it was not objectively unreasonable [for the officer], when confronted with [the suspect's] dangerous, chaotic, high-speed flight, to believe that [the suspect] posed a serious risk to persons who might be in the area and to resort to deadly force to prevent such persons from being injured." *Id.* at 183. The Third Circuit found that the officer was therefore entitled to qualified immunity. *Id.* at 184.[1]

In light of the Supreme Court and Third Circuit's case law, I find that Officer Lias's use of force was not unreasonable and that he did not violate clearly established law that existed at the time of the incident. Plaintiff was engaged in a high-speed car chase with the police. Officer Lias saw Plaintiff's vehicle driving recklessly, reversing into an intersection, and then driving towards Officer Lias and his police cruiser. Officer Lias testified that when he saw the oncoming vehicle he feared for his safety, the safety of his partner, and other officers. In a matter of mere seconds, Plaintiff's vehicle straightened out to avoid hitting Officer Lias's police cruiser. As in *Brosseau*, *Scott*, and *Thompson*, Officer Lias reasonably fired at a fleeing suspect who was intent on evading

---

[1] Plaintiff points to *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999), in support of his contention that Officer Lias's actions violated clearly established federal law. (DE 81 at 34.) In *Abraham*, an off-duty police officer shot a shoplifter as he was attempting to flee from the mall in vehicle. *See Abraham*, 183 F.3d at 282. Although the officer, who was on foot, alleged that she was facing the suspect's car head on when it began to move towards her, the Third Circuit held that a reasonable jury could find that she did not fire her gun until after vehicle had missed her and she was no longer in danger. *See id*. at 294-95. The Third Circuit reversed the district court's grant of summary judgment finding that there was a material dispute as to whether the officer was in danger at the time she shot the suspect. *See id.* at 294-95. Significantly, however, as the Third Circuit has noted, *Abraham* never addressed the issue of qualified immunity. *See Thompson*, 679 F. App'x at 183; *see also Martin for Estate of Webb*, 762 F. App'x at 84 ("[In *Abraham*], we did not render a holding concerning qualified immunity or, for that matter, objective reasonableness[.]"). Thus, the Third Circuit has stated that "it is not certain whether the court [in *Abraham*] would have concluded that no reasonable officer could have responded as the officer did there." *See id*. Accordingly, I do not find *Abraham* persuasive in determining whether Officer Lias is entitled to qualified immunity.

8

capture and presented a danger to those in the area. Officer Lias did not have the benefit of hindsight or the deliberative atmosphere of a judge's chambers; he had to make a split-second decision. Plaintiff himself admitted to evading police and creating a "risk of death or injury to any person" when he was convicted for second-degree eluding.[2] Viewing the facts in a light most favorable to Plaintiff, the circumstances presented a very real threat of harm such that a reasonable officer in Officer Lias's position would have feared for his safety and the safety of those around him. The language of a recent similar case in this district applies here: "The existing law on the issue of excessive force in the context of fleeing suspects does not demonstrate that it was clearly established that [Officer Lias's] conduct violated [Plaintiff's] constitutional rights." *Webb*, 2018 WL 623643, at *7. Accordingly, summary judgment will be granted for Officer Lias.

### B. City of Elizabeth

Plaintiff alleges that the City of Elizabeth "permitted, encouraged, tolerated and knowingly acquiesced to an official pattern, practice, and/or custom of its police officers, including Officer Lias, of violating the constitutional rights of the public at large, include the Plaintiff." (DE 47 at 6.) Generally, an individual may sue a local government "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Here, however, Plaintiff's claim against the City of Elizabeth must fail because, as I have found, there was no underlying violation of his constitutional rights. *See Blair v. City of Pittsburgh*,

---

[2] The charge of second-degree eluding under N.J. Stat. Ann. § 2C:29-2(b) includes the following criminal elements: (1) knowingly flees or attempts to evade police while driving on a street or highway; (2) after having received a signal from the police officer indicating he should stop; and (3) creating a "risk of death or injury to any person." N.J. Stat. Ann. § 2C:29-2(b); *State v. Thomas*, 900 A.2d 797, 808 (N.J. 2006).

711 F. App'x 98, 103 (3d Cir. 2017) (citing *Mulholland v. Gov't Cty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.")). Accordingly, absent an underlying constitutional injury for which it can be held responsible, the City of Elizabeth is entitled to summary judgment.[3]

### C. State Law Claims

Plaintiff's complaint also raises state law claims under the New Jersey Civil Rights Act ("NJCRA"). (DE 47 at 9–10.) In general, the NJCRA is construed in parallel with § 1983, and rarely if ever produces a different result. *See, e.g., Perez v. Zagami*, 218 N.J. 202, 515 (2014); *RaCapt. Mos v. Flowers*, 429 N.J. Super. 13, 23 (App. Div. 2012) (stating that NJCRA was "modeled on the federal civil rights law which provides for a civil action for deprivation of civil rights." (citations omitted)); *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Still, qualified immunity is bound up with the status and development of federal case law. I therefore exercise a more cautious option.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." The Supreme Court has held that once federal claims are dismissed, a federal court should "hesitate to exercise jurisdiction over state claims," unless circumstances justify this exercise. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements*, 101 F.3d 1492, 1504 (3d Cir. 1996) ("once all federal claims have been dropped from a case, the case simply does not belong in federal court.").

---

[3] Having granted summary judgment for Officer Lias and the City of Elizabeth, I need not address the City of Elizabeth's argument to bar Plaintiff's expert at trial. (DE 78-3 at 16.)

The federal claim that gave rise to jurisdiction always was weak. Now that it has been dismissed, no particular circumstances weigh in favor of retaining jurisdiction except the age of the case. The effort put in thus far, however, will hardly be wasted; the discovery, for example, is equally available for use in a case in state court, should plaintiff persist in pursuing his claims there. There is no prejudice to the plaintiff, who will not lose the benefit of filing within the statute of limitations if he refiles in state court within 30 days. 28 US.C. § 1367(d).

In my discretion, pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Court will accordingly dismiss Plaintiff's claims under the New Jersey Civil Rights Act without prejudice.

## VI. CONCLUSION

For the foregoing reasons, Officer Lias's motion for summary judgment (DE 77) and the City of Elizabeth's motion for summary judgment (DE 78) will be granted. An appropriate Order will be entered.

DATED: June 30, 2020  /s/ Kevin McNulty

KEVIN MCNULTY
United States District Judge